# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VERONICA CUTHILL, et al. | : | CASE NO. |
| Plaintiffs, | : | 3:18-cv-1679 (JCH) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL R. POMPEO, | : | |
| Defendant. | : | JULY 25, 2019 |
| | : | |
| | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS (DOC. NO. 20) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 21)**

## I.     INTRODUCTION

The plaintiffs, Veronica Cuthill ("Cuthill") and her daughter, Tatiana Maria Diaz de Junguitu Ullah ("Diaz"), bring this action against Michael R. Pompeo, Secretary of the United States Department of State ("the State Department"). See Complaint ("Compl.") (Doc. No. 1).  Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., they seek review of the National Visa Center's ("NVC") determination that, upon Cuthill's naturalization, her application for her daughter to join her as an immigrant to the United States should be reclassified from one visa category to another.

The State Department filed a Motion to Dismiss.  See Defendant's Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 20).  In response, Cuthill and Diaz filed a Motion for Summary Judgement.  See Plaintiff's Opposition to Defendant's Motion to Dismiss and Plaintiff's Motion for Summary Judgment ("Mot. for Summ. J.") (Doc. No. 21).  For the reasons set forth below, the Motion for Summary Judgment (Doc. No. 21) is granted, and the Motion to Dismiss (Doc. No. 20) is denied, except as to Diaz.

## II.   BACKGROUND

### A.   The Family-Based Immigrant Visa Process

Since the passage of the Immigration and Nationality Act in 1952, the American immigration system has allowed two general forms of immigration: employment- or family-based.  The family-based immigration process begins when an American citizen or legal permanent resident ("LPR"), referred to as a "sponsor," files an I-130 Petition for Alien Relative.  See generally 8 U.S.C. § 1154 (outlining the process for applying for and obtaining an immigrant visa).  The petition explains the person's relationship to the family member who seeks to immigrate.  The United States Citizenship and Immigration Service ("USCIS") reviews I-130 petitions to verify the family relationship.  USCIS must approve the I-130 petition before the family member who seeks to immigrate can begin the visa application process.  Id.

Once an I-130 petition is approved, it is sent to the Department of State's National Visa Center ("NVC") for pre-processing.  8 U.S.C. § 1202; 8 C.F.R. 204.1(a), 204.2(d).  The NVC initiates visa processing at the appropriate time and collects forms and fees from visa applicants.  Once the required forms are submitted and a visa becomes available, the NVC works with the embassy or consulate of the putative immigrant's country of origin to schedule an interview.  After that interview, a United States consular officer informs the putative immigrant whether her application is approved or denied.  8 U.S.C. § 1154.

Sponsors can file I-130 petitions for five specific categories of relatives.  First, American citizens can file I-130 petitions for their spouses or unmarried sons and daughters who are under age 21.  8 U.S.C. § 1151(b)(2).  These family members are

2

considered "immediate relatives" of American citizens, and given significant benefits in the immigration process, which are discussed below. Id. The four remaining categories are: (1) adult sons and daughters of United States citizens, who are eligible for F1 visas; (2) relatives of LPRs, who are eligible for F2A visas if they are the minor children or spouses of LPRs and F2B visas if they are the adult sons and daughters of LPRs; (3) married adult sons and daughters of United States citizens, who are eligible for F3 visas; and (4) brothers and sisters of United States citizens, who are eligible for F4 visas. See generally 8 U.S.C. § 1153(a) (listing visa categories). Under the statute, a "child" must be under 21 years of age. 8 U.S.C. § 1101(b)(1). The court will use the term "adult child" to refer to children over 21, and "minor child" to refer to children under 21.

The worldwide levels of immigration to the United States are limited by statute, as outlined in section 1153 of title 8 of the United States Code. See 8 U.S.C. § 1153(c)(1) ("The worldwide level of family-sponsored immigrants under this subsection for a fiscal year is . . . equal to . . ."). Because more individuals apply than there are visas available in many years, family members in the family-based preference categories must wait for a visa to become available before they can complete the application process. See 8 U.S.C. § 1153(e)(1). Consider, for example, a United States citizen applying for an immigrant visa for her unmarried adult daughter. The United States citizen will file an I-130 petition, which may or may not be approved by USCIS. The petition's mere approval, however, may not entitle the daughter to an immigrant visa, if the previous year's limit on family-based immigrant visas has been

met.  Once the I-130 petition is approved, the daughter's visa application will effectively be placed in a line, to wait for a visa to become available.

Once a visa becomes available, the application is considered current.  The State Department regularly issues bulletins informing family-based visa applicants when their applications will become current, based on the date they filed the I-130 petition, known as a priority date.  See 8 U.S.C. § 1153(g).  The visa bulletins, included in the parties' exhibits, state, for example, that in July 2018, applications in the F1 category were current if their accompanying I-130 petitions had a priority date of—that is, had been filed before—April 22, 2011.  See, e.g., Compl., Ex. 5 (listing priority dates for applications in the F1, F2A, F2B, F3 and F4 visa categories in July 2018).

The spouses and minor children of United States citizens, however, never have to wait for a visa.  This is so because there is no cap on the number of immigrant visas available for the immediate relatives of United States citizens.  See 8 U.S.C. 1151(c).

In summary, the amount of time a parent will have to wait for her child's visa to become available depends on the category of visa for which the child is eligible, which in turn is a function of the child's age and the parent's immigration status:

| Parent's Status<br>Child's Age | LPR | U.S. Citizen |
|---|---|---|
| **21 years old, or older** | F2B visa category. 8 U.S.C. § 1153(a)(2)(B).<br><br>Priority date, as of July 2019: 9/1/2013. | F1 visa category. 8 U.S.C. § 1153(a)(1)<br><br>Priority date, as of July 2019: 3/8/2012. |
| **Under 21 years old** | F2A visa category. 8 U.S.C. § 1153(a)(2)(A).<br><br>Priority date, as of July 2019: Current. | Immediate Relative. 8 U.S.C. § 1151(b)(2)(A)(i).<br><br>No limit; visa always available. |

As originally written, the worldwide immigration limits and family-based immigration categories interacted in two ways to disadvantage United States citizens or LPRs who applied for family-based visas for their children. First, because of the definition of "child" in section 1101, children can "age out" of one visa category. This happens when, for example, the child of an LPR turns 21 while her I-130 application is pending, or while she is waiting in line for a visa to become available. Prior to the enactment of the Child Status Protection Act ("CSPA"), Pub. L. No. 107-208 (Aug. 6, 2002), the child of an LPR who turned 21 would become ineligible for an F2A visa, and her application would convert to an application for an F2B visa. Because the immigration statues allow for a greater number of F2A than F2B visas, the line in the F2B category is much longer. See 8 U.S.C. § 1151(c). The parent and child would have to wait an additional amount of time to be able to complete the visa process.

Second, the long wait for visas sometimes interacts with an individual's decision to naturalize and become a United States citizen.  For example, an LPR may have submitted an I-130 petition for her adult child.  While the adult child waited in the F2B line, the LPR may have become eligible for naturalization.  Upon the parent's naturalization, the child's family preference status would change from F2B to F1. Depending on the number of visas available in each category, the line in the F1 category can be much longer.  See 8 U.S.C. § 1151(c).  The child would have to wait an additional amount of time to complete her visa application and join her parent in the United States.  In effect, this conversion sometimes punished the children of LPRs who chose to become American citizens by pushing their children into longer "lines" for visas.

Congress responded to both situations by passing the CSPA.  First, the CSPA responded to the "age-out" problem by creating a statutory age for the children of LPRs in the F2A category.  See 8 U.S.C. § 1153(h)(1).  In section 1153(h)(1), Congress instructed immigration officials to calculate the age of a child who had initially been in the F2A category by looking at the child's age when the visa became "current" and subtracting the number of days the visa had been processing.  For example, if the child had been 18 when the I-130 petition was filed and the petition was pending before USCIS for two years, if a visa became current when the child was 22, the NVC would "subtract" two years from the child's age.  In this case, the child would remain eligible for an F2A visa.  Thus, she could stay in the shorter F2A line, rather than being moved to the longer F2B line through no fault of her own.

6

Second, Congress responded to the naturalization problem by enacting section 1154(k)(2).  As discussed, if an LPR parent filed an I-130 petition for an adult child and then naturalized, that child's petition would be converted from the F2B category to the F1 category.  To ensure that this automatic conversion did not punish LPRs who chose to naturalize, Congress created an opt-out provision in section 1154(k).  Paragraph 1 of section 1154(k) provides that, if a petition for an adult child is "initially filed" in the F2B category and the parent later naturalizes, the F2B petition "shall be converted" to an F1 petition for the adult child of a U.S. citizen.  8 U.S.C. § 1153(k)(1).  However, paragraph 1 would not apply "if the [adult child] file[d] with the Attorney General a written statement that he or she elects not to have such conversion occur."  8 U.S.C. § 1153(k)(2).  In practice, this meant that the adult children of LPRs who naturalized would get to choose whether they would wait in the F2B line or the F1 line. The minor children of LPRs would also not be penalized if their parents naturalized: under section 1151(f)(1), if a petition was initially filed as an F2A petition for an LPR's minor child, the minor child would automatically convert to an "immediate relative" upon her parent's naturalization. 8 U.S.C. § 1151(f)(1)-(2).

In short, these provisions of CSPA limited the consequences of the worldwide cap in immigration by providing for "age out" protections for minor children of LPRs who turned 21 while their applications were pending and by allowing adult children whose parents naturalized to "opt-out" of waiting in the longer F1 visa line.  See 8 U.S.C. §§ 1153(h), 1154(k).

This case raises the question of what happens when both the child's age and the parent's citizenship status change.  As explained more fully below, Diaz turned 21 and

7

her mother naturalized while the family-preference visa application filed on Diaz's behalf was pending in the F2A category. The question on the merits, should this court reach it, is in which category Cuthill's application for Diaz belongs.

B.    Facts

Veronica Cuthill, a citizen of the United Kingdom, became an LPR in the United States in 2012. Compl. ¶ 11; Defendant's Rule 56(a) Statement of Facts ("Def.'s 56(a)") (Doc. No 24-1) ¶ 4 (agreeing that Cuthill became a citizen "in the 2010s"). On September 29, 2016, she filed an I-130 Petition for her daughter, Diaz. Def.'s 56(a) ¶ 12. Diaz, also a citizen of the United Kingdom, was "exactly 19 years 9 months and 6 days old" when her mother filed the petition. Id. ¶ 14. USCIS approved the I-130 petition in September 2017, 363 days after it was initially filed. Id. ¶ 15. In October 2017, the visa bulletin reported that visa numbers were available for Diaz's category— the F2A category for minor children of LPRs—if the priority date was earlier than October 22, 2015. Def.'s 56(a) ¶ 16; see also Compl., Ex. 2. As such, a visa number was not immediately available for Diaz, and her application remained pending in the F2A line. Id.

On December 23, 2017, Diaz turned 21. See Defs.' 56(a) ¶ 1 (listing Diaz's date of birth). However, because her application had been pending for 363 days, she could continue to wait in the F2A line, rather than being automatically moved to the F2B line. See 8 U.S.C. 1153(h). In other words, Diaz's visa application was never converted from the F2A category into the F2B category, because the processing time provision of section 1153(h)(1) required visa adjudicators to subtract the 363 days Diaz's I-130

8

petition had been pending from her biological age to calculate her statutory age.  See 8 U.S.C. § 1153(h)(1).

On June 25, 2018, Cuthill naturalized as a United States citizen.  Def.'s 56(a) ¶ 18.  She notified the NVC that she had naturalized on July 13, 2018.  Id.  ¶ 20.  It was her expectation that Diaz's visa classification would change from F2A to the "Immediate Relative" category, and that a visa would be immediately available.

The next day, the NVC advised Cuthill's counsel that Diaz's visa classification had changed from F2A to F1.  Def.'s 56(a) ¶ 21; see also Compl. Ex. 4 (Doc. 1-4).

In its Motion before this court, the State Department argues that this change occurred "as a matter of law," citing the Foreign Affairs Manual and section 1151 of title 8 of the United States Code.  See Def.'s 56(a) ¶ 21 (citing 9 F.A.M. § 502.1-1(d)(5)(1)(b); 8 U.S.C. § 1151(f)(1)-(2)).  Sections 1151(f)(1) and (2) provide, in their entirety:

> (f) Rules for determining whether certain aliens are immediate relatives
>
> (1) Age on petition filing date. Except as provided in paragraphs (2) and (3), for purposes of subsection (b)(2)(A)(I), a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title shall be made using the age of the alien on the date on which the petition is filed with the Attorney General under section 1154 of this title to classify the alien as an immediate relative under subsection (b)(2)(A)(i).
>
> (2) Age on parent's naturalization date. In the case of a petition under section 1154 of this title initially filed for an alien child's classification as a family-sponsored immigrant under section 1153(a)(2)(A) of this title, based on the child's parent being lawfully admitted for permanent residence, if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i), the determination described in paragraph (1) shall be made using the age of the alien on the date of the parent's naturalization.

9

8 U.S.C. § 1151(f)(1)-(2).

In contrast, Cuthill argues that the reclassification was "erroneous" and "arbitrary and capricious."  See Mot. for Summ. J. at 17.  She relies on section sections 1151(f) and 1153(h).  Id. at 18.  Section 1153(h) provides that, "with respect to a relationship described in subsection (a)(2)(A)," such as the relationship in this case, "a determination to whether the alien satisfies the age requirement . . . [under] section 1101(b)(1)," defining children, "shall be made using—(A) the age of the alien on the date on which an immigrant visa number becomes available for such alien . . . reduced by (B) the number of days in the period during which the applicable petition . . . was pending."  8 U.S.C. § 1153(h).  Applying that provision, Cuthill and Diaz argue, Diaz was approximately six months shy of her twenty-first birthday when Cuthill naturalized.  See Mot. for Summ. J. at 10.

In summary, the parties disagree over which provision applies to determine Diaz's "age" under section 1151(f) and proper visa classification.  The State Department also argues that Diaz lacks standing to bring this suit, and that this court cannot review the classification because there has been no final agency action.  See Mot. to Dismiss at 6, 19.

III.    **STANDARD OF REVIEW**

A.    Motion to Dismiss

The State Department seeks to dismiss this action for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).[1]  When reviewing a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must liberally construe the claims, accept the factual allegations in the complaint as true, and draw all reasonable inferences in the non-movant's favor.  See Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).  To withstand such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

B.    Motion for Summary Judgment

Cuthill and Diaz, in response to the Motion to Dismiss, have filed a Motion for Summary Judgement.  On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it

---

[1] Cuthill and Pompeo's Motion for Summary Judgment categorizes the Motion to Dismiss as arguing both that there is no subject-matter jurisdiction and that the Complaint has failed to state a claim. See Mot. for Summ. J. at 11 ("The Agency's reclassification decision is a final agency action under 5 U.S.C. § 704, and therefore, this Court should deny the Agency's Rule 12(b)(1) motion to dismiss."). However, the Motion to Dismiss references only the 12(b)(6) standard, and courts in the Second Circuit have concluded that the APA's finality requirement is not jurisdictional in nature, but "an element of a claim for relief under the APA." Pearl River Union Free Sch. Dist. v. King, 214 F. Supp. 3d 241, 251 (S.D.N.Y. 2016) (citing Sharkey v. Quarantillo, 541 F.3d 75, 87 n.10 (2d Cir. 2008) (collecting cases from the First, Fourth, Sixth, and D.C. Circuits holding or suggesting that the finality requirement is not jurisdictional)).

is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir.2000).  Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in its favor.  See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir.2000).  A moving party is "entitled to judgement as a matter of law" on an issue if that party bears the burden of proof on the issue and the undisputed facts meet that burden, or if the non-moving party bears the burden of proof and the moving party shows "that there is an absence of evidence in the record to support the nonmoving party's position."  Knight v. City of New York, No. 16-cv-7888 (RJS), 2019 WL 95480 (S.D.N.Y. Jan. 2, 2019) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

    C.    APA Review

Courts analyzing final agency action that is subject to judicial review apply the "arbitrary and capricious" standard of section 706(2)(A) of the Administrative Procedure Act ("APA").  See Simko v. Bd. of Immigration Appeals, 156 F. Supp. 3d 300, 307 (D. Conn. 2015) (citing Karpova v. Snow, 497 F.3d 262, 267 (2d Cir.2007) (noting that section 706(2)(A) applies to "any agency action")).  That section allows courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  Motor

<u>Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). "[S]o long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action . . . ." <u>Karpova</u>, 497 F.3d at 268. If, however, the agency decision "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," the agency's decision must be set aside.  <u>Westchester v. U.S. Dept. of Housing and Urban Development</u>, 802 F.3d 413, 431 (2d Cir.2015) (internal quotations and citation omitted); <u>see also</u> <u>Berrios v. Holder</u>, 502 Fed. App'x. 100, 101 (2d Cir.2012).

**IV.    DISCUSSION**

    A.    <u>Standing</u>

    The State Department argues that Diaz lacks standing to challenge the visa category classification because she is an "unadmitted non-resident alien."  Mot. to Dismiss at 20.  Cuthill and Diaz argue that Diaz does have standing, because she is within the "zone of interests" of the relevant statute and regulations.  Mot. for Summ. J. at 15.

    In <u>Kerry v. Din,</u> 135 S. Ct. 2128 (2015), the Supreme Court heard a case brought by a wife, who is a U.S. citizen, challenging the U.S. government's denial of her husband's visa.  The Court wrote that "because [the husband] is an unadmitted and nonresident alien, he has no right of entry into the United States, and no cause of action to press in furtherance of his claim for admission."  135 S. Ct. at 2131 (citing <u>Kleindienst</u>

13

v. Mandel, 408 U.S. 2576 (1972)).  The parties have briefed this matter as a question of standing, but the Court has clarified that the "unadmitted and nonresident alien" lacks a cause of action regarding her entry.  Thus, Diaz cannot bring this action on her own behalf.  Addressing the State Department's Motion to Dismiss (Doc. No. 20), under Rule 12(b)(6), it is granted in part as to Diaz.

However, courts have allowed cases challenging administrative decisions on I-130 Petitions to proceed on behalf of the visa petitioner.  See Li v. Renaud, 709 F. Supp. 2d 230, 236 n.3 (S.D.N.Y. 2010), aff'd, 654 F.3d 376 (2d Cir. 2011).  Although Diaz's claim is dismissed, the case proceeds on Cuthill's behalf.  The Motion to Dismiss as to Cuthill is denied.

B.    Finality

The State Department also argues that this court may not review the visa classification because it does not amount to a "final agency action," as required for review under section 704 of the Administrative Procedure Act.  See Mot. to Dismiss at 6; 5 U.S.C. § 704.  Cuthill argues that all the requirements of finality, as laid out by the Supreme Court, are met.  Mot. for Summ. J. at 11.

Pursuant to section 704, courts may only review "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704(a).  In Bennett v. Spear, the Supreme Court laid out "two conditions [that] must be satisfied" for an agency action to be considered final: first, the action "must mark the 'consummation' of the agency's decision-making process" on a matter rather than being "merely tentative or interlocutory;" and second, "the action must be one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'"  Bennett v. Spear, 520

14

U.S. 154, 177–78 (1997) (citing Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948); Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)); see also Top Choice Distributors, Inc. v. U.S. Postal Service, 138 F.3d 463, 466 (2d Cir. 1998).

The visa category classification at issue here clearly meets the second requirement.  That decision determined Cuthill's "rights or obligations."  Specifically, it affected her right, as a United States citizen, to have her child join her in the United States by extending the amount of time she would have to wait for her child to be eligible for a visa.  Should this court decline to review the agency's decision, Cuthill will be forced to wait several years for her daughter to proceed to the next steps in the visa process.  She argues that her child should be able to complete that process to join her in the United States now.

The classification decision also meets the first requirement, in that it marks the "consummation" of the decision-making process regarding the type of visa for which Diaz is eligible.  Although the agency will address other questions regarding Diaz's visa application in the future, the question presented in this case—for what type of visa is Diaz eligible—has definitively been answered.  As Cuthill argues, there is no opportunity for her to challenge the answer given through internal agency appeal.  The classification decision is binding on later stages of the visa application process.  Finally, Cuthill has no other adequate remedy in a court, because judicial review of the final decision over whether a visa should issue is not only unavailable, but would address a fundamentally different question, perhaps many years in the future.  See Am. Acad. Of Religion v. Napolitano, 573 F.3d 115, 123 (2d Cir. 2009).

15

Furthermore, Cuthill correctly notes that courts in this Circuit have exercised jurisdiction over questions related to the visa category classification process.  See Li v. Renaud, 709 F. Supp. 2d 230 (S.D.N.Y. 2010) (reviewing a mother's challenge to the priority date USCIS established for her son, for whom she had filed a family preference petition), aff'd, 654 F.3d 376 (2d Cir. 2011); see also Berrios v. Holder, 502 Fed. App'x. 100, 101 (2d Cir. 2012) (reviewing USCIS's denial of an I-130 petition under the APA).

C.    Merits

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir.2000). The parties' Rule 56(a) statements identify no genuine issues of material fact.[2]  Thus, the question before this court is whether Cuthill is entitled to judgement as a matter of law.  Indeed, summary judgment is "generally appropriate" on questions of whether an agency's determination is "arbitrary and capricious," for that question is purely "a legal issue amenable to summary disposition."  Schwebel v. Crandall, 343 F.Supp.3d 322 (2018) (quoting Noroozi v. Napolitano, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012) (internal quotations omitted)).

---

[2] Throughout its Rule 56(a) Statement, the State Department rejects Cuthill's use of the phrase "visa application" to describe the I-130 Petition that she filed on behalf of her daughter.  See Defendant's Rule 56(a) Statement of Facts ("Def.'s 56(a)") (Doc. No 24-1).  Beyond this difference, however, the parties agree that Diaz was born in December 1996; that Cuthill filed an I-130 Petition for Diaz to obtain an immigrant visa in September 2016; that the I-130 Petition was approved 363 days later on June 27, 2017; that Diaz turned twenty-one on December 23, 2017; that Diaz was not "statutorily" 21 on that date; and that Cuthill naturalized on June 25, 2018.

As discussed, this court reviews final agency action under the "arbitrary and capricious" standard outlined in the APA.   Cuthill's challenge to the agency action in this case, the re-classification of her daughter's visa application from one category to another, ultimately rests on a question of statutory interpretation: whether "age" in section 1151(f)(1) and (2) refers to Diaz's biological age, or to her statutory age, as defined by section 1153(h)(1).   The agency argues "age" must refer to biological age, while Cuthill argues it must refer to statutory age.

It is a basic tenant of statutory interpretation that courts "begin with the text" to determine if the statute has a plain and unambiguous meaning.  United States v. Epskamp, 832 F.3d 154, 162 (2d Cir. 2016) (quoting Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 108 (2d Cir. 2012)).  "A particular statute's 'plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute.'"  Louis Vuitton, 676 F.3d at 108 (quoting Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003)).  As the Supreme Court has explained, a court's "duty, after all, is 'to construe statutes, not isolated provisions,'" which requires the court to "read the words 'in their context and with a view to their place in the overall statutory scheme.'"  King v. Burwell, 135 S. Ct. 2480, 2488–89 (2015) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000); Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290 (2010)); see also Gundy v. United States, 139 S. Ct. 2116, 2126 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (quoting National Assn. of Home Builders v. Defenders of Wildlife,

17

551 U.S. 644, 666, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007)).  Beyond context and

structure, courts also "often look[ ] to 'history [and] purpose' to divine the meaning of

language" and support their reading of the plain text."  See Gundy, 139 S.Ct. at 2126

(quoting Maracich v. Spears, 570 U.S. 48, 76 (2013) (internal quotation marks omitted)).

      In cases in which an administrative agency is tasked with interpreting and

enforcing a statute, courts will defer to the agency's interpretation when the two-step

framework established in Chevron, U.S.A., Inc. v. Natural Resources Defense Council,

Inc., 467 U.S. 837 (1984), instructs it to do so.  Under Chevron, the court first asks

whether a statute is "ambiguous," and, if it is, defers to the agency's interpretation so

long as that interpretation is "reasonable."  Chevron, 467 U.S. at 842-43.  Chevron

deference applies only to formal adjudications and agency-promulgated rules; informal

agency interpretations and guidance documents are entitled, based on their

persuasiveness, to deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944).  See

Buffalo Transportation, Inc. v. United States, 844 F.3d 381, 385 (2d Cir. 2016) ("Such

informal agency guidance receives deference " 'according to its persuasiveness,' as

evidenced by the 'thoroughness evident in [the agency's] consideration, the validity of

its reasoning, its consistency with earlier and later pronouncements, and all those

factors which give it power to persuade.'") (quoting <u>Estate of Landers v. Leavitt</u>, 545

F.3d 98, 107 (2d Cir. 2008), <u>as amended</u> (Jan. 15, 2009) (internal quotation omitted)).[3]

       1.    Plain text

The parties dispute the proper meaning of the word "age" in section 1153(f),

which establishes "[r]ules for determining whether certain aliens are immediate

relatives."  8 U.S.C. § 1151(f).  Again, that section reads, in full:

> (f) Rules for determining whether certain aliens are immediate relatives
>
> (1) Age on petition filing date. Except as provided in paragraphs (2) and (3), for purposes of subsection (b)(2)(A)(i), a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title shall be made using the age of the alien on the date on which the petition is filed with the Attorney General under section 1154 of this title to classify the alien as an immediate relative under subsection (b)(2)(A)(i).
>
> (2) Age on parent's naturalization date. In the case of a petition under section 1154 of this title initially filed for an alien child's classification as a family-sponsored immigrant under section 1153(a)(2)(A) of this title, based on the child's parent being lawfully admitted for permanent residence, if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i), the determination described in paragraph (1) shall be made using the age of the alien on the date of the parent's naturalization.

8 U.S.C. § 1151(f).

Section 2, which applies "[i]n the case of a petition . . . initially filed for an alien

child's classification as a family-sponsored immigrant under section 1153(a)(2)(A)," like

---

[3] Cuthill argues that "this Court should review [Matter of] Zamora [-Molina, 25 I. & N. Dec. 606 (B.I.A. 2011)] for the power to persuade," and that the decision is not persuasive.  The court will not reach the question of whether <u>Matter of Zamora-Molina</u> is best reviewed for the power to persuade or under the more deferential <u>Chevron</u> regime, because it finds the statute unambiguous.  <u>See</u> <u>Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 843 (1984) ("Rather, <u>if the statute is silent or ambiguous with respect to the specific issue</u>, the question for the court is whether the agency's answer is based on a permissible construction of the statute.") (emphasis added).

the petition at issue here, states that, if the petition is "converted, due to the naturalization of the parent, to a petition to classify the [child] as an immediate relative," the "determination of whether an alien satisfies the age requirement in the matter proceeding subparagraph (A) of section 1101(b)(1)" "shall be made using the age of the [child] on the date of the parent's naturalization." 8 U.S.C. § 1151(f)(1)-(2).  Section 1101(b)(1) defines "child" as an individual under 21.  Section 1153(h) provides "rules for determining whether certain aliens are children," and governs the F2A category.  8 U.S.C. § 1153(h).

Section 1151(f)(2) does not expressly specify whether the "age of the [child]" refers to the child's biological age or statutory age.  However, looking to the "statutory scheme" as a whole, this court concludes that the term "age" must refer to the child's statutory age as defined in section 1153(h).  As the Ninth Circuit explained in Tovar v. Sessions, 882 F.3d 895 (9th Cir. 2018), section 1151(f)(2) only applies to petitions "initially filed for an alien child's classification" as an F2A minor child.  Tovar, 882 F.3d at 901.  In other words, every application—to which section 1151(f)(2) applies—is governed by section 1153(h), which determines the "age" of an applicant in the F2A category by subtracting the number of days the I-130 petition was pending before USCIS.  See 8 U.S.C. § 1153(h)(1)("For purposes of subsection[ ] (a)(2)(A) . . ., a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title shall be made using . . . the age of the alien on the date on which an immigrant visa number becomes available for such alien . . . reduced by the number of days in the period during which the applicable petition . . . was pending.")  In other words, in order to determine whether 1151(f)

applies to a given application at all, the agency must first determine whether the application was filed in the F2A category.  Next, to make the determination in paragraph f(1)—that is, the determination of whether the beneficiary is a "child"—the agency must determine the age of the beneficiary.  To determine the age of a beneficiary in the F2A category, it must turn to section 1153(h), which defines age for that category.  The most logical reading of the statute as a whole is that section 1151(f) refers to the applicant's statutory age, taking into account the reduction for processing time created in section 1153(h).  See Tovar, 882 F.3d at 901.  "Nothing in the text of 8 U.S.C. § 1153(h)(1) precludes th[e] formula [in that section] from applying to F2A beneficiaries who are potentially eligible for visas due to a parent's naturalization to the same extent that it applies to F2A beneficiaries who are potentially eligible for visas due to getting to the front of the F2A line."  Id.

This reading is also consistent with federal regulations, which provide that, "[e]ffective upon the date of naturalization of a petitioner who had been lawfully admitted for permanent residence, a currently valid petition according preference status under section [1153](a)(2) of the [Immigration and Nationality] Act to the petitioner's . . . unmarried children under twenty-one years of age shall be regarded as having been approved for immediate relative status under section 201(b) of the Act."  See 8 C.F.R. § 204.2(i)(3).  At the time of Cuthill's naturalization, there was a valid petition according Diaz preference status under section 1153(a)(2)(A) as Cuthill's unmarried child under twenty-one years of age.

None of the State Department's arguments to the contrary are persuasive.  The State Department asserts that the Tovar court "ignored that the two sections address

F2A beneficiaries at different points in time: one whose parent is still an LPR and one whose parent subsequently naturalized."  Mot. to Dismiss at 14.  The State Department explains that the INA has always distinguished between children of U.S. citizens and LPRs.  Those distinctions, however, favor the U.S. Citizen over the LPR, while the outcome the State Department argues for in this case would do the opposite.

The State Department also argues that section 1154(k)(2) supports their conclusion.  Section 1154(k) allows adult children of naturalized petitioners whose applications are initially in the F2B category to "opt out" of having their applications converted to the F1 category when their parent naturalizes.  8 U.S.C. § 1154(k).  However, the INA creates no similar opt-out option when a parent naturalizes and the child's application was initially in the F2A category.  The Department argues that this is because "Congress did not intend to confer such a benefit."  Mot. to Dismiss at 14.  In Tovar, the Ninth Circuit concluded that a corresponding opt-out for the F2A category was missing because it was unnecessary: Congress "intended F2A petitions to always convert to immediate relative petitions," and no applicant would choose to opt-out of the immediate relative category.  Tovar, 882 F.3d at 904 ("Congress did not overlook anything because it is always better to be the minor child of a citizen . . . than to be the minor child of an LPR. If a minor child stays a minor child despite the parent's naturalization, then an opt-out provision parallel to 8 U.S.C. § 1154(k)(2) for F2A beneficiaries would have no purpose.")  The State Department argues that its conclusion that Congress did not intend for F2A children to have the option to opt-out is "more obvious" and "simpler" than the Tovar court's conclusion.  The Department's reading of the statute suggests that Congress intended to move all F2A applicants,

22

whose parents naturalized, into the F1 category and intended for those applicants to remain in the F1 category, regardless of how long the line would be.  In other words, the State Department argues that Congress <u>intended</u> to punish LPRs who naturalized.  As discussed later, the Congressional record expressly refutes this argument.  <u>See, e.g.</u>, 148 Cong. Rec. H4989-01, H4991, 2002 WL 1610632 ("Immigrants are in effect being penalized for becoming citizens, and we don't want that.") (statement of Rep. Sensenbrenner); 148 Cong. Rec. H4989-01, H4992, 2002 WL 1610632 ("In any event, it is certainly unfortunate that immigrants are in effect being penalized for becoming citizens.") (statement of Rep. Jackson Lee).  Even in <u>Tovar,</u> the government did not go as far as the Department does here, and instead argued that the lack of an opt-out in the F2A category was "congressional oversight," rather than an intentional choice to deny F2A beneficiaries a benefit.  <u>Tovar</u>, 882 F.3d at 904.  Reading the statute holistically, this court agrees with the Ninth Circuit in <u>Tovar</u>.  In not creating an opt-out provision for F2A beneficiaries, Congress neither intended to punish LPRs who naturalized, as the Department argues here, nor overlooked a necessary provision. Instead, an opt-out was unnecessary, because a minor child's application would convert to an application for an immediate relative.

Further, the Department argues that the lack of an explicit cross-reference in sections 1151(f) or 1153(h) to the other section means that they cannot work in tandem, but ignores the fact that both statutes cite to section 1101(b), which defines a "child" for the purpose of the INA.  <u>Compare</u> Mot. to Dismiss at 15, <u>with</u> 8 U.S.C. § 1101(b) ("The term 'child' means an unmarried person under twenty-one years of age who is . . ."). This court agrees with the <u>Tovar</u> analysis on this point:

23

> The cross-references found in § 1153(h)(1) define the class of people who may take advantage of the age-reduction provision, but they do not limit the circumstances in which the reduced age is relevant. An explicit cross-reference is unnecessary when [sections 1153(h), 1151(f), and 1101(b)] are so closely related and form a cohesive whole.

Tovar, 882 F.3d at 901.

The court disagrees with the State Department's characterization of the relief Cuthill seeks as allowing her child to "cut . . . in front" before the adult children of other U.S. citizens: the application filed on Ms. Diaz's behalf was never in a line with other children of U.S. citizens, because she never "aged out" of the F2A category under the statutory definition in section 1153(h)(1).  Mot. to Dismiss at 18.  Cuthill does not seek to move that application to the front of a line because there is no line for the minor children of U.S. citizens, and because, had Cuthill made the choice to not become a citizen of this country, a visa would have become available before her daughter's statutory twenty-first birthday.

In its response to the Motion for Summary Judgment, the State Department further argues that the "express inclusion of only F2A and derivative beneficiaries in the scope of 8 U.S.C. 1153(h) indicates that the application of the age adjustment does not extend to other purposes," citing the expressio unius est exclusio alterius cannon of statutory interpretation.  Def.'s Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment (Doc. No. 24) at 2.  However, that cannon applies only when the items expressed are "members of an associated group or series," justifying the inference that items not mentioned were excluded by deliberate choice.  Barnhart v. Peabody Coal Co., 123 S. Ct. 748, 760 (2003).  It "applies only when 'circumstances support[ ] a sensible inference that the term left out must have been meant to be

excluded.'" <u>N.L.R.B. v. SW Gen., Inc.</u>, 137 S. Ct. 929, 940, 197 L. Ed. 2d 263 (2017) (quoting <u>Chevron, U.S.A., Inc., v. Echazabal</u>, 536 U.S. 73, 81 (2002) (reasoning that a "notwithstanding" clause does not give rise to such inference because it "confirms rather than constrains breadth.")  Section 1153(h) begins with the phrase, "For the purposes of subsections (a)(2)(A) and (d)[.]"  8 U.S.C. § 1153(h).  Section 1153(h) does not suggest that the calculation that follows applies <u>only</u> to those subsections, nor does it purport to close off the universe of subsections to which the calculation applies.  In other words, it does not "support a sensible inference" that any term left out was meant to be excluded. The only inference it supports is the inference that the agency must subtract processing time "[f]or the purposes of subsections (a)(2)(A) and (d)."  <u>See also</u> <u>Rai v. WB Imico Lexington Fee, LLC</u>, 802 F.3d 353, 362 (2d Cir. 2015) (declining to apply the <u>expressio unius</u> cannon to a statutory provision that "simply defines 'agent,' as that term is specifically used in various provisions of the statute," because there was no indication that the statute's "drafters 'considered the unnamed possibility and meant to say no to it.'") (quoting <u>Barnhart</u>, 123 S.Ct. at 760).

The Department also argues that the term "age" refers to biological age in other sections of the statute.  Def.'s Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 2.  However, the section that they cite specifically refers to visas in the F3 category (for the married, adult children of citizens), not F2 category.  <u>Id.</u>  In fact, neither party identifies, nor has this court been able to find, a single provision of the INA that uses a modifier—such as "biological," "true," or, on the other hand, "statutory" or "as determined by statute"—to describe the word "age."  <u>See, e.g.,</u> 8 U.S.C. § 1101 (providing definitions used throughout the INA); 8 U.S.C. § 1158 (allowing unmarried

children of parents who seek asylum to remain classified as children for the purposes of obtaining asylum as derivative beneficiaries so long as the application was filed before the child turned 21, without referencing a "statutory age" or cross-referencing section 1153); 8 U.S.C. § 1184 (same, for children of applicants for visas for victims of human trafficking).

The State Department also argues that "Congress would not have needed to draft section 1151(f)(2) at all" to "have the effect plaintiffs desire," because section 1151(f)(1) freezes the age of the child "on the date the immigration petition was filed." See Def.'s Memorandum in Opposition to Plaintiffs' Mot. for Summ. J. at 3. This argument rests on a false premise. If section 1151(f)(1) covered petitions for children of citizens and LPRs, the argument might have some basis. However, section 1151(f)(1) deals only with petitions by a citizen parent. It does not address petitions by non-citizen (i.e. LPR) parents. See 8 U.S.C. § 1151(f)(1) (dealing specifically with petitions, filed by citizen parents, to "classify the alien as an immediate relative under subsection (b)(2)(A)(i)"); 8 U.S.C. § 1151(f)(2) (referring to applications filed for a "child's classification as a family-sponsored immigrant under section 1153(a)(2)(A)," which deals with the spouses and unmarried children of LPRs). Thus, section 1151(f)(2) is necessary.

The State Department also argues that the phrase "the date on which an immigrant visa number becomes available" in section 1153(h) makes clear that that section cannot apply to section 1151(f), because there is no "date on which an immigrant visa number becomes available" in the Immediate Relative category. Id. at 5. However, a different reading is just as likely: knowing that there would be no availability

26

date with which to do the calculation in 1153(h), Congress provided, in 1151(f), that the age of a beneficiary initially in the F2A category would be determined "using the age of the alien on the date of the parent's naturalization," a date that could effectively be considered an "availability date" because a visa becomes immediately available upon a child's classification as an immediate relative.  See 8 U.S.C. § 1151(f)(2).

Adopting the State Department's view of the statute would lead to the absurd result that because Cuthill became a United States citizen, she will not be able to have her child join her as an immigrant to this country for several years.  Had Cuthill remained an LPR, a visa for her daughter would already be available.  See Visa Bulletin, July 2019, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html.  In fact, it would have become available before her daughter turned 21 in December 2018.  See Visa Bulletin, December 2018, https://travel.state.gov/content/travel/en/ legal/visa-law0/visa-bulletin.html.  However, because Cuthill chose to naturalize, and to exercise the rights and responsibilities of her citizenship, she must wait several additional years before her child can complete the visa process and move to this country.  Reading 1151(f) in context with 1153(h), as the court does here, avoids that absurd result.  See Griffin v. Oceanic Contractors, Inc., 458 U.S. 564 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); Nat. Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 98 (2d Cir. 2001)

("[A]bsurd results are to be avoided and internal inconsistencies in the statute must be dealt with.") (internal quotation omitted).[4]

        2.      Legislative History and Purpose

While this court rests its decision on the language of the statute, the history of the statute and the purpose of the CSPA also support the conclusion that section 1153(h) applies to all applications initially classified in the F2A category, including in cases where the petitioner naturalizes.

As Cuthill explains, several comments in the congressional record of the CSPA reflect Congress's concern that the immigration laws protect children and avoid punishing petitioning parents for naturalizing.  See, e.g., H.R. REP. 107-45 at 2, 2002 U.S.C.C.A.N. at 641 (explaining that the bill "addresses the predicament of these aliens, who through no fault of their own, lose the opportunity to obtain an immediate relative visa before they reach age 21."); 148 Cong. Rec. H4989-01, H4991, 2002 WL 1610632 ("Immigrants are in effect being penalized for becoming citizens, and we don't want that.") (statement of Rep. Sensenbrenner); 148 Cong. Rec. H4989-01, H4992, 2002 WL 1610632 ("In any event, it is certainly unfortunate that immigrants are in effect being penalized for becoming citizens.") (statement of Rep. Jackson Lee); 147 Cong. Rec. E1095-03, 147 Cong. Rec. E1095-03, E1096, 2001 WL 660831 (explaining that the

---

[4] For the reasons above, the court disagrees with the Board of Immigration Appeals' conclusion in Matter of Zamora-Molina, 25 I. & N. Dec. 606 (B.I.A. 2011), that the statutory language is clear and refers to biological age.  Sciamarelli v. District Director, U.S. Citizenship and Immigration Svcs., 697 Fed. App'x. 958 (11th Cir. 2017), which cited that case, is also not persuasive.  In Sciamarelli, which dealt with adjustment of status, the Eleventh Circuit concluded that "Sciamarelli was 23 and had no pending visa petition at the time his stepfather was naturalized. Under those circumstances, CIS was not permitted to adjust his age to under 21." Id. at 960.  That case is fundamentally different from the one before this court, where there is a pending visa application to which section 1153(h) can be applied.

provisions that freeze the age of a child of a U.S. citizen were intended to correct the "inequitable outcome" that those children would be moved to another category through no fault of their own) (statement of Rep. Mink).

Further, the legislative history of the automatic conversion provision supports this conclusion. As the Ninth Circuit explained in Tovar, when the Immigration and Nationality Act was first adopted, there was no distinction between minor and adult children of LPRs: both "fell in to a single F2 category." Tovar, 882 F.3d at 902 (citations omitted). Regulations provided that, if the parent naturalized, valid petitions for adult children in the F2 category would convert to petitions in the F-1 category for the adult children of citizens; valid petitions for minor children in the F2 category would convert to petitions for immediate relatives. Id. Congress divided the singular F2 category into two categories—F2A for minor children, and F2B for adult children—in 1990. Id. The regulation was updated to reflect what became a "one-to-one conversion: F2A petitions would be converted to immediate relative petitions, and F2B petitions would be converted to F1 petitions." Id. at 903. Read in the context of this legislative history, the CPSA's codification of section 1154(k), which provides for automatic conversion of F2B petitions to F1 petitions and the corresponding opt-out, is simply a codification of one piece of the former regulation. The regulatory scheme suggested that only F2B petitions would convert to F1 petitions, and Congress adhered to that understanding in passing the CSPA. Congress did not contemplate that F2A petitions, like that at issue here, would convert to F1 petitions. Id. The regulations currently provide that, "[e]ffective upon the date of naturalization of a petitioner who had been lawfully admitted for permanent residence, a currently valid petition according

preference status under section [1153](a)(2) of the [Immigration and Nationality] Act to the petitioner's . . . unmarried children under twenty-one years of age shall be regarded as having been approved for immediate relative status under section 201(b) of the Act." See 8 C.F.R. § 204.2(i)(3).  At the time of Cuthill's naturalization, there was a valid petition according Diaz preference status under section 1153(a)(2)(A) as Cuthill's unmarried child under twenty-one years of age.  This regulation, in the context of the changes to the categories in the INA, supports a reading that incorporates Diaz's statutory age in determining whether her application must be reclassified into the F1 category.

In conclusion, this court agrees with the Ninth Circuit that Congress expected the term "age" in section 1151(f)(1) to refer to the "age" as determined by the provisions governing the child's F-2A petition, that is, sections 1153(a)(2)(A) and 1153(h)(1).  "A fair reading of legislation demands a fair understanding of the legislative plan."  King v. Burwell, 135 S. Ct. at 2496 (2015).  Such a reading, in this case, compels the court to read section 1151(f) not in a vacuum, but with an awareness of other provisions, including section 1153(h) and section 1154(k).  Considering the scheme of the INA, the court concludes that the best reading of "age" of a minor child in section 1151(f) is one that follows the process outlined for determining the age of a minor child in section 1153(h).  Because the State Department reclassified Ms. Diaz's visa application as falling in the F1 category, rather than immediate relative category, based on an erroneous interpretation of law, this court concludes that the classification decision was "not in accordance with law."  5 U.S.C. § 706(2)(A).

**V.      CONCLUSION**

For the foregoing reasons, the State Department's Motion to Dismiss is **DENIED**

as to Cuthill, but **GRANTED** as to Diaz.  Plaintiff Cuthill's Motion for Summary Judgment

is **GRANTED**.  Plaintiff Diaz's Motion for Summary Judgment is **DENIED** in light of her

lack of a cause of action.

The Secretary is ordered to instruct the agency to reclassify Cuthill's application

on Diaz's behalf as an application in the immediate relative category.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 25th day of July, 2019.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge